## STATE EX REL. RICHARD P. HOLTON v. BOARD OF EDUCATION OF INDEPENDENT SCHOOL DISTRICT NO. 84, SLEEPY EYE.

222 N. W. 2d 277.

September 27, 1974—No. 44296.

*Carl A. Jensen,* for appellant.

*Hall, Joyce & McHaffie* and *Clinton J. Hall,* for respondent.

*Peterson, Popovich, Knutson & Flynn, Peter S. Popovich,* and

---

[2] Kiesow v. Kiesow, 270 Minn. 374, 133 N. W. 2d 652 (1965); Bouman v. Reiter, 297 Minn. 494, 210 N. W. 2d 215 (1973).

*Ivars J. Krafts,* for Minnesota School Boards Association, amicus curiae.

Heard before Sheran, C. J., and Otis, Scott, and Knutson, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

This matter arose as the result of the discharge of Richard Holton from his position as elementary school principal. He applied to the district court for a writ of certiorari to review the termination proceedings. The district court found that the school board had not effectively terminated his employment. The board appeals from an order denying its motion to dismiss the writ and remanding the matter to the board. We reverse.

We have serious doubts that the writ was adequate to confer jurisdiction on the district court. However, since we are reversing on other grounds, and the merits of the appeal raise important questions of first impression, we have decided to address ourselves to those issues.

On April 28, 1972, the superintendent and school board of Independent School District No. 84 notified Richard Holton, principal of the public elementary school, that he was immediately suspended and discharged from his duties, pursuant to Minn. St. 125.12, subd. 8. He was advised that he had a right to demand a hearing before the school board in accordance with § 125.12, subd. 8. Such a hearing was requested and was subsequently held in the Sleepy Eye public school on May 22, 23, and 26, 1972.

At the hearing, both the board and the principal were represented by counsel. The board called as witnesses a number of parents, teachers, school board members, and the county public health nurse. It intended to produce some 13 more witnesses when it called Holton for examination as an adverse witness. He refused to take the stand on the ground that he could not be compelled to testify until after the board had presented its evidence. The board thereupon concluded the hearing without calling the remainder of its witnesses. Holton then objected that the board

was required to "rest" its case and allow him to present his evidence.

On June 2, 1972, the school board adopted its findings of fact and order of discharge. Thereafter, the district court issued its writ of certiorari. On March 1, 1973, after a hearing, the trial court entered an order denying the board's motion to dismiss for lack of jurisdiction and remanding the proceedings to the board. The court held that the board had no right to call Holton for adverse examination and that Holton's contract had not been effectively terminated.

The termination of the employment of a tenured teacher or principal is governed by Minn. St. 125.12, subds. 8 and 9, as follows:

"Subd. 8. A school board may discharge a continuing-contract teacher, effective immediately, upon any of the following grounds:

(a) Immoral conduct, insubordination, or conviction of a felony;

(b) Conduct unbecoming a teacher which requires the immediate removal of the teacher from his classroom or other duties;

(c) Failure without justifiable cause to teach without first securing the written release of the school board;

(d) Gross inefficiency which the teacher has failed to correct after reasonable written notice;

(e) Willful neglect of duty; or

(f) Continuing physical or mental disability subsequent to a twelve months leave of absence and inability to qualify for reinstatement in accordance with subdivision 7.

"Prior to discharging a teacher the board shall notify the teacher in writing and state its ground for the proposed discharge in reasonable detail. Within ten days after receipt of this notification the teacher may make a written request for a hearing before the board and it shall be granted before final action is taken. The board may, however, suspend a teacher with pay

pending the conclusion of such hearing and determination of the issues raised therein after charges have been filed which constitute ground for discharge.

"Subd. 9.  Any hearing held pursuant to Laws 1967, Chapter 890, shall be held upon appropriate and timely notice to the teacher, and shall be private or public at the discretion of the teacher. At the hearing, the board and the teacher may each be represented by counsel at its or his own expense, and such counsel may examine and cross-examine witnesses and present arguments. The board shall first present evidence to sustain the grounds for termination or discharge and then receive evidence presented by the teacher. Each party may then present rebuttal evidence. Dismissal of the teacher shall be based upon substantial and competent evidence in the record. All witnesses shall be sworn upon oath administered by the presiding officer of the board. The clerk of the board shall issue subpoenas for witnesses or the production of records pertinent to the grounds upon the request of either the board or the teacher. The board shall employ a court reporter to record the proceedings at the hearing, and either party may obtain a transcript thereof at its own expense."

The trial judge found that adverse examination was not contemplated by the statute and that by terminating the hearing after Holton refused to submit to adverse examination the board denied Holton his statutory rights. The trial court concluded that Holton's employment was not effectively terminated.

In proceedings other than suits in district court,[1] examination by an adverse party is provided by Minn. St. 1949, § 595.03:

---

[1] Minn. St. 1949, § 595.03, is superseded, in respect to practice and procedure in district courts, by Rule 43.02, Rules of Civil Procedure, as follows:

"A party may interrogate an unwilling or hostile witness by leading questions. A party may call an adverse party or his managing agent or employe or an officer, director, managing agent or employe of the state or any political subdivision thereof or of a public or private corporation or of a partnership or association or body politic which is an adverse

"A party to the record of any civil action or proceeding, or a person for whose immediate benefit such action or proceeding is prosecuted or defended, or the directors, officers, superintendent, or managing agents, or any appointive or elective official, or agent or employee having knowledge as to the matter in controversy, of any corporation or of the state or any department or division thereof, or any political subdivision of the state which is a party to the record, may be examined by the adverse party as if under cross-examination, subject to the rules applicable to the examination of other witnesses. The party calling such adverse witness shall not be bound by his testimony, and the testimony given by such witness may be rebutted by the party calling him for such examination by other evidence. Such witness, when so called, may be examined by his own counsel, but only as to the matters testified to on such examination."[2]

The question is whether this matter is a "civil action or proceeding" within the meaning of the statute. We have held that the right to call opposing parties for adverse examination "applies to the trial of any civil action involving an issue of fact, and also to the trial of any proceeding involving an issue which the parties are entitled as a matter of right to have heard upon oral testimony of witnesses and other evidence as in ordinary trials." In re Disbarment of Halvorson, 175 Minn. 520, 521, 221 N. W. 907, 908 (1928). Thus, we have held that § 595.03 is applicable

party, and interrogate him by leading questions and contradict and impeach him on material matters in all respects as if he had been called by the adverse party. Where the witness is an adverse party he may be examined by his counsel upon the subject matter of his examination in chief under the rules applicable to direct examination, and may be cross-examined, contradicted and impeached by any other party adversely affected by his testimony. Where the witness is an officer, director, managing agent, or employe of the adverse party he may be cross-examined, contradicted and impeached by any party to the action."

[2] The statute has been repealed by L. 1974, c. 394, § 12, but applies to this case.

to disbarment proceedings (In re Disbarment of Halvorson, *supra*) and to election contests. Hanson v. Village of Adrian, 126 Minn. 298, 302, 148 N. W. 276, 277 (1914); Hawley v. Wallace, 137 Minn. 183, 163 N. W. 127 (1917). Moreover, in probate proceedings the proponent of a will may be examined by a contestant. In re Brown, 38 Minn. 112, 35 N. W. 726 (1888).

Since Minn. St. 125.12, subd. 9, quoted above, contemplates an adversary civil proceeding and does not conflict with Minn. St. 1949, § 595.03, we hold that the school board had the right to call Holton for adverse examination.

Other jurisdictions have held that a teacher is obligated to testify in his own termination proceedings. In re Application of Yorke, 61 Misc. 2d 794, 797, 306 N. Y. S. 2d 343, 347 (1969). Similarly, in Board of Education v. Chattin, 376 S. W. 2d 693, 697 (Ky. App. 1964), the board's right to examine a teacher was sustained as follows:

"* * * There were several charges which * * * Chattin declined to discuss at all, even when put on the witness stand by the school board. (At one point he refused to admit his telephone number.) With all due respect to his 'rights,' we cannot approve this procedure. He had not been charged with a crime, nor was his refusal to give answers to various questions based on any suggestion or possibility of criminal involvement. His employer had the right to inquire into his official actions and to expect frank answers. * * * The object of the hearing required by KRS 161.790(5) is to get the facts into the open."

The same reasoning was followed in compelling a mother to testify as an adverse witness in a child dependency hearing. People v. Davis, 11 Ill. App. 3d 775, 779, 298 N. E. 2d 350, 353 (1973). Dismissal for refusal to answer a school superintendent's inquiry about a teacher's relevant activities has been held not to violate constitutional principles in Beilan v. Board of Education, 357 U. S. 399, 78 S. Ct. 1317, 2 L. ed. 2d 1414 (1958). These are not criminal proceedings, and in the absence of a particular privi-

lege[3] the school board had a right to prove its case in whole or in part by the adverse examination of the teacher involved.

Although the trial court was correct in stating that a hearing is a prerequisite to terminating a contract under Minn. St. 125.12, we are of the opinion that Holton was afforded an adequate hearing and that his refusal to submit to adverse examination justified the board's action in concluding the proceeding. We hold that by wrongfully frustrating the board's right to elicit his testimony he waived his opportunity to present further evidence. That which was presented supported the decision to terminate.

The grounds for Holton's discharge were as follows:

(1) He was insubordinate to the superintendent and the school board.

(2) He exhibited immoral conduct in the context and standards of an elementary school.

(3) His conduct was unbecoming a principal.

(4) He was guilty of willful neglect of duty.

(5) He promised to resign and to waive further proceedings under the statutes.

In Anderson v. Consolidated School Dist. No. 144, 196 Minn. 256, 257, 264 N. W. 784 (1936), we stated:

"* * * The management of our schools is an important function. It is vested in our boards of education to the exclusion even of juries and judges. Nowhere does it touch public welfare more intimately or at a more sensitive point than in respect to the primary grades, where the pupils are at the most impressionable period of their school experience. There, if anywhere, the responsibility of the supervising board is to be concentrated rather than

---

[3] Minn. St. 595.02 grants to certain witnesses the privilege of not testifying. The Fifth Amendment might also be applicable, although Holton did not claim it here. However, if the Fifth Amendment is the basis of the privilege claimed, the party must take the stand and invoke the privilege against self-incrimination as each question is asked. Wiley v. Shanahan, 289 Minn. 463, 467, 185 N. W. 2d 523, 525 (1971).

diluted, as it would be by subjection to an unrestricted reviewing power in juries and courts. * * *

"* * * Its decision is not to be set aside unless it has acted in bad faith, or arbitrarily and capriciously, upon the facts before it or properly within its knowledge."

Without elaborating on the evidence, we find there was sufficient basis for Holton's discharge.

A number of other procedural and evidentiary questions have been raised. However, we do not hold school boards in termination hearings to the same strict rules we require of trial courts. See, State ex rel. Ging v. Board of Education, 213 Minn. 550, 564, 7 N. W. 2d 544, 553 (1942).

Although the fairness of a hearing before a tribunal which may have already decided the outcome is at first blush questionable, the object of such proceedings under Minn. St. 125.12 is not so much to reach a wholly impartial decision as it is to ventilate the grounds for terminating the contract and create a record for judicial review. With this premise in mind, we hold that Holton's discharge was not arbitrary and was accomplished by substantial compliance with statutory directives.

Reversed.